FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

98 NOV 23 PM 2: 43

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| WILLIAM J. WYNN, ex relator, State of Alabama, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) CV 98-BU-I597-S ) ) |
| PHILIP MORRIS INC., et al., | ) ) ) |
| Defendants. | ) |

ENTERED
NOV 23 1998

Memorandum Opinion

This cause comes on to be heard on a motion to remand filed by the plaintiff, William J. Wynn ("Wynn"), on July 21, 1998.[1] In his motion, the plaintiff asserts that the court lacks jurisdiction over the instant action because it is a *quo warranto* diversity action, not removable to federal court, and because the matter in controversy does not exceed $75,000.00 in value. The defendants, Philip Morris Incorporated, R.J. Reynolds Tobacco Company, Brown & Williamson Tobacco Corporation and Lorillard Tobacco Company, contend, by contrast, that the court has diversity jurisdiction over the instant action.

In resolving the issues pertaining to removal and remand, the court first notes certain precepts that are well-established in this circuit:

> ... On a motion to remand, the removing party bears the burden of establishing jurisdiction. *See Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356 (11th Cir. 1996). The removal statute should be construed narrowly with doubt construed against

---

[1] William J. Wynn is a circuit judge for the Circuit Court of Jefferson County, Alabama.

removal. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 107-09 [] (1941). *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996).[2]

## Facts

On May 27, 1998, the plaintiff, Wynn, filed in the Circuit Court of Jefferson County, Alabama, an Application for Writ of *Quo Warranto* on behalf of the State of Alabama against the defendants to revoke the corporate charters of the defendants because of alleged violations of the Alabama Constitution and Alabama statutes in the defendants' sale of cigarettes. The defendants removed the case to federal court on June 22, 1998, averring that the district court had diversity jurisdiction over the instant action under 28 U.S.C. § 1332. On July 21, 1998, thirty days after the defendants filed their notice of removal, the plaintiff filed a motion to remand.

## Contentions & Analysis

The requirements of diversity jurisdiction under 28 U.S.C. § 1332(a)(1) are, first, complete diversity of state or foreign citizenship between the plaintiffs and all defendants (*see Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 267 (1806) and *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978)) and satisfaction of the present statutory amount in controversy requirement of over "$75,000.00, exclusive of interest and costs." There is no issue here that diversity of citizenship exists between the parties. Instead, the parties focus exclusively on whether the kind of action brought by the plaintiff is amenable to removal and whether the amount in controversy requirement has been met.

---

[2] For an excellent recent discussion of the justifications for and against strictly construing the extent of subject matter jurisdiction in the context of whether a district court has the authority to address an issue of personal jurisdiction where it arguably does not have subject matter jurisdiction, *see Marathon Oil Co. v. Ruhrgas*, 145 F.3d 211 (5th Cir. 1998) (en banc) (holding that subject matter jurisdiction must be resolved before the personal jurisdiction issue is addressed).

The plaintiff first asserts that diversity jurisdiction is absent because the instant case is a quo warranto action premised on state law, which is unremovable to federal court. The defendants, by contrast, contend that quo warranto actions are generally removable to federal court, so long as all jurisdictional prerequisites are met. Second, the plaintiff contends that its suit does not meet the requisite amount in controversy requirement under 28 U.S.C. § 1332, because, from the perspective of the plaintiff, the value of the injunctive relief sought is not in excess of $75,000.00. The defendant contends that, by contrast, the value of the relief is, in fact, in excess of that amount.

QUO WARRANTO.

The quo warranto action has a significant heritage, having initially been a criminal prosecution used by English Kings to remove those individuals who had abused or misappropriated their office. See Statute of Ann, 9 Ann ch. 20; Statute of William & Mary, 5 W. & M. ch. 18. While the action was initially utilized to remove public officers who did not posses the authority to perform the duties of an office, in the 18th century, the state began to frequently apply the *quo warranto* action against corporations. At present, all fifty states and the District of Columbia have a codified *quo warranto* provision.[3]

---

[3] *See* Thomas Linzey, *Awakening a Sleeping Giant: Creating a Quasi-Private Cause of Action for Revoking Corporate Charters in Response to Environmental Violations*, 13 PACE ENV. L. REV. 219, 280 n.15 (1995) (listing the various states that have a statutory *quo warranto* remedy: "Ala. Code § 6 - 6 -590 (1994); Ariz. Rev. Stat. Ann . § 10 -1430 (effective 1/1/96) (1994); Ark. Code Ann . § 4 -75 - 205 (Michie 1993); Cal. Civ. Proc. Code § 803 (Deering 1994); Cal. Bus. & Prof. Code § 18410 (Deering 1993): Cal. Corp. Code § 1801 (Deering 1994); Colo. Rev. Stat. § 7-114 -301 (1994); Conn. Gen. Stat. § 35 - 36a (1993); Del. Code Ann . tit. 8, § 284 (1993); D.C. Code Ann . § 29 - 419 (1995); Fla. Stat. Ann . § 607.1430 (West 1994); Ga. Code Ann. §§ 7- 1- 92, 14 - 4 -160 (Michie 1994); Haw. Rev. Stat. § 842-5 (1993); Idaho Code § 490.1430 (1994); Ill. Rev. Stat. ch. 805, para. 20/1 (1994); Ind. Code Ann. § 23 -1- 47-1 (Burns 1994); Iowa Code Ann. § 490.1430 (West 1995); Kan. Stat. Ann. § 17- 6812 (1993); Ky. Rev. Stat. Ann. § 271B.14 -300 (Baldwin 1993); La. Rev. Stat. Ann. § 12:163 (West 1993); Me. Rev. Stat. Ann. tit. 13 -A, s 1111 (West 1994); Md. Corps. & Ass'ns Code Ann. s 3 -513 (1993); Mass. Ann. Laws ch. 155, s 11 (Law. Co-op. 1994); Mich. Comp. Laws s 600.4521 (1994); Minn. Stat. Ann . § 556.07 (West 1993); Miss. Code Ann. §§ 11-39 -1, 11-39 - 3 (1993); Mo. Rev. Stat. § 355.255 (1993); Mont. Code Ann. § 35 - 6 -102 (1994); Neb. Rev. Stat. § 25 -21,121 (1994); Nev. Rev. Stat. Ann. § 598A.180 (Michie 1993); N.H. Rev. Stat. Ann. § 293 -A:14.30 (1994); N.J. Rev. Stat. § 14A:12- 6 (1993); N.M. Stat. Ann. § 53 - 16 -13 (Michie 1994); N.Y. Bus. Corp. Law s 1101 (McKinney 1994); N.C. Gen. Stat. s 55 -14 -30 (1994); N.D. Cent. Code s 10 -19.1-118 (1994); Ohio Rev. Code Ann. § 2733.02 (Baldwin 1994); Okla. Stat. tit. 15 § 567 (1994); Okla. Stat. tit. 12, § 1532 (1994); Or. Rev. Stat. § 30.580 (1993); Pa. Stat. Ann. tit. 71, § 824 (1994); R.I. Gen. Laws § 7-1.1- 87 (1993); S.C. Code Ann. § 33 -14 -300 (Law. Co-op. 1993); S.D. Codified Laws Ann. § 21-28 -12 (1994); Tenn. Code Ann. § 48 -24 -301 (1994); Tenn. Code Ann. § 29 -35 -101 (1994); Tex. Corps. & Ass'ns Code Ann. § 3A-Art.7.01 (West 1994); Utah Code

Alabama has two sets of substantive *quo warranto* provisions, one applicable to vacating or annulling corporate charters, Code of Alabama § 6-6-590,[4] and another for removing officers from their positions, Code of Alabama § 6-6-591, the former of which is applicable to the instant action. Section 6-6-590 states, in relevant part:

> An action may be commenced under this article, in the name of the state, against the offending corporation, on the information of any person for the purpose of vacating the charter or annulling the existence of any corporation, other than municipal, whenever such corporation:
> (2) Violates the provisions of any law, by which such corporation forfeits its charter, by abuse of its powers. . . .

In *Ames v. State of Kansas*, 111 U.S. 449 (1884), Kansas brought actions in quo warranto against the Kansas Pacific Railway Company and against the Union Pacific Railway Company in order to dissolve a consolidation of the Kansas Pacific Railway Company with the Union Pacific Railway Company, in violation of the Kansas Pacific Railway Company's charter. The defendants, the Kansas Pacific Railway Company and the directors of the Union Pacific Railway Company, removed the cases to federal court, alleging jurisdiction based upon the existence of a federal question. Kansas challenged the removal, contending that the *quo warranto* actions were not civil actions removable to federal court. Noting that the *quo warranto* action has "lost its character as a criminal proceeding in everything except form," and that "it is used as a civil remedy only," the court found that the nature of the action did not prohibit its removal to federal court. *Id.* at 460-61.

The plaintiff asserts that *Ames v. State of Kansas* is inapplicable to the instant action, because (1) other precedent from the Fifth Circuit Court of Appeals holds that federal courts do not have jurisdiction over *quo warranto* actions and (2) because the rationale of *Ames* only applies to federal question cases and does not extend to cases in which jurisdiction is premised upon

---

Ann. § 16-10a-1430 (1994); Vt. Stat. Ann. tit. 11A, § 14.30 (1994); Va. Code Ann. § 8.01-636 (Michie 1994); Wash. Rev. Code Ann. § 7.56.010 (West 1995); W. Va. Code § 53-2-1 (1994); Wis. Stat. Ann. § 180.1430 (West 1994); Wyo. Stat. § 17-16-1430 (1994).") Alaska Statute 09.50.310 has been recognized as that state's *quo warranto* provision. *See Port Valdez Co., Inc. v. City of Valdez*, 522 P.2d 1147, 1153 n.18 (Ak. 1974).

[4] These provisions have existed in the Alabama Code in one form or another since 1852.

diversity of citizenship. The plaintiff cites to *Morin v. City of Stuart*, 111 F.2d 773 (5th Cir. 1940), as demonstrative of his first argument. In *Morin*, the plaintiff commenced an action in district court, requesting an injunction against the City of Stuart to prevent it from collecting municipal property taxes from the plaintiff. The basis of the plaintiff's action was that the City's boundaries did not extend to the plaintiff's property because the decision to extend the City's boundaries was unconstitutional.[5] Apparently, the district court disagreed with the plaintiff that the action was one for injunctive relief and held that the proper action was instead one for *quo warranto* under Florida law challenging the municipal charter issued under Florida law. *Id.* at 775. The Court of Appeals agreed with the district court, holding that because, one, the impermissibility of the municipal expansion would first have to be challenged in a *quo warranto* action before an action for injunctive relief for unconstitutional imposition of taxes could be pursued and, two, the *quo warranto* action wholly involved interpretation of the City's charters under Florida law, there was, as yet, no federal issue at stake. Therefore, the district court could not assert federal question jurisdiction over the action. *Id.* at 775-76.[6]

The court does not see how *Morin* prevents removal of a *quo warranto* action in a circumstance in which the prerequisites of jurisdiction are present. Even if *Morin* held what the plaintiff asserts that it holds, Supreme Court precedent would be binding over it.

The plaintiff has provided no support for its second argument, that removal of a *quo warranto* action in which there exists diversity of citizenship is somehow "different," thereby requiring remand. Nor can the court discern any genuine reason for differing the treatment of a *quo warranto* action from the numerous other types of civil actions, in law and equity, that can be removed to federal court.

---

[5] It was this claim of the unconstitutionality of the tax assessment, which arguably raised a question of federal law, that was the alleged basis of federal jurisdiction.

[6] Arguably, after the *quo warranto* action was completed and it was determined that the plaintiff's property was not within municipal bounds, the plaintiff could pursue in federal court an action to enjoin the tax collection as unconstitutional.

AMOUNT IN CONTROVERSY.

The amount in controversy requirement has existed since the Judiciary Act of 1789, which included a $500.00 requirement for actions grounded in diversity of citizenship. 1 Stat. 73, 78. At present, this amount is $75,000.00. A plaintiff choosing not to enter the doors of the federal courthouse may underplead the amount in damages that she seeks or neglect to demand any amount at all. Being the master of her complaint, the plaintiff is generally free to choose whether or not to plead in excess of the amount in controversy and thereby choose her court. *See Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994); *St. Paul's Indemnity Corp. v. Red Cab Co.*, 303 U.S. 283, 294 (1938).

"Defendant's right to remove and plaintiff's right to choose his forum are not on equal footing; for example, unlike the rules applied when plaintiff has filed suit in federal court with a claim that, on its face, satisfies the jurisdictional amount, removal statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." *Burns v. Windsor Ins. Co.*, 31 F.3d at 1092. Therefore, where the plaintiff fails to state an amount in controversy, the defendant must demonstrate by a preponderance of the evidence that the actual amount in controversy exceeds $75,000.00. *Tapscott v. MS Dealer Service Corp.*, 77 F.3d at 1357. When the plaintiff has calculated a limit on the relief sought, the defendant must prove to a legal certainty "that opposing counsel is falsely assessing the case or is incompetently doing so," or what is equivalent, "that plaintiff's claim must exceed [the amount in controversy]." *Burns v. Windsor Ins. Co.*, 31 F.3d at 1095.

In determining whether the desired relief from the instant suit — i.e., dissolution of the defendants' corporate charters — presents an amount in controversy over $75,000.00, the court must first determine how to evaluate that relief for purposes of calculating the amount in controversy. The Supreme Court has held that, in claims for injunctive relief, "the amount in controversy is measured by the value of [the injunction]." *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 347-48 (1977). Determining the value of the injunctive relief is generally a problematic endeavor, as the value of the relief for the plaintiff may differ from its value for the defendant. In his FEDERAL JURISDICTION, Erwin Chemerinsky complains:

      The problem that arises in valuing suits for injunctive or declaratory relief is that the amount in controversy varies depending on the perspective: is it the monetary harms the plaintiff will incur without the court relief; is it the costs the court's remedy will impose on the defendant; or is it the combination of both the plaintiff's harms and the defendant's costs? Some authority can be found to support many different approaches. There are many decisions holding that the jurisdictional amount in a suit for a declaratory judgment or injunction is determined by the harm the plaintiff will incur without court relief. In *Glenwood Light & Water Co. v. Mutual Light, Heat & Power Co.*, [239 U.S. 121 (1915),] the Court considered a suit to enjoin the defendant from interfering with the plaintiff's utility poles and wires. Although compliance would cost the defendant only $500, the Court found the jurisdictional amount requirement to be met based on allegations of the expenses that the plaintiff would incur without a favorable court decision.

      Other courts have said that the amount in controversy is determined by looking to the sum at stake for the party invoking federal court jurisdiction. [*See, e.g., McCarty v. Amoco Pipeline Co.*, 595 F.2d 389, 393 (7th Cir. 1979); *Thomas v. General Elec. Co.*, 207 F. Supp. 792 (D. Ky. 1962).] Thus, if the plaintiff files a suit for declaratory judgment or injunctive relief in federal court, the plaintiff's harms without the remedy determine the amount; but if the defendant is removing the case to federal court, then the cost to the defendant of complying with the proposed relief determines the amount.

      But the trend seems to be that the amount in controversy is met if <u>either</u> the plaintiff's harms or the defendant's costs of compliance will exceed $50,000. [*See Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348 (1961); *McCarty v. Amoco Pipeline Co.*, 595 F.2d 389; *Smith v. Washington*, 593 F.2d 1097 (D.C. Cir. 1978).]

Erwin Chemerinsky, FEDERAL JURISDICTION, 2D EDITION, § 5.3.4, pp. 291-92 (1994).

In *Ericsson GE Mobile Communications, Inc., v. Motorola Communications & Electronics, Inc.*, 120 F.3d 216, 219 (11th Cir. 1997), the Eleventh Circuit Court of Appeals held, in the context of a case filed initially in federal district court, that in determining the value of injunctive relief for purposes of federal jurisdiction, "this circuit has adopted the plaintiff-viewpoint rule."[7]

Clearly the value of the action for the defendants is greater than $75,000.00. The defendants stand to lose billions of dollars in revenue if they lose their right to sell tobacco products within the State of Alabama. For the plaintiffs, however, the issue of valuation is not so clear. The plaintiff claims that he personally has no right that is being impaired by the defendants

---

[7] It is not clear that the Eleventh Circuit Court of Appeals is bucking any trends here. In *Ericsson*, the Eleventh Circuit reports that the majority view is the plaintiff's perspective rule and this fact is also recorded in 15 MOORE ET AL., supra note 16, P 102.109[5], at 102-199. 14A CHARLES ALLEN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3703 (2d ed. 1987 & 1997 Supp.), notes that the picture is not so clear.

and, therefore, the value of any relief to him has only the value that successful prosecution would bring.[8] However, the plaintiff brings his action on behalf of the State of Alabama, which would, as the defendants point out, no longer be required to pay the costs of medical care if the suit is successful.

The plaintiff asserts that the amount in controversy should be calculated solely from *his* perspective, not from that of the State. However, under Alabama law, a *quo warranto* action is pursued on behalf of the State, not on behalf of the individual bringing suit. *See* Code of Alabama § 6-6-590. As such, any relief accrues to the benefit of the State and should be calculated from that perspective. The Eleventh Circuit Court of Appeals has stated in the context of aggregation of an award of punitive damages, "the state and not the victim is considered the true party plaintiff because punitive damages do not compensate a victim for loss but serve to punish and deter." *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1359 (11th Cir. 1996). A similar rationale exists in the *quo warranto* context, where the plaintiff explicitly brings his action on behalf of the State.

The health care costs that would be reduced by the reduction in cigarette smoking resulting from any annulment of the defendants' corporate charters could be considered indirect by-products of the vindication of any right by the plaintiffs, in this case, the right of the State to protect its citizens from assault, reckless endangerment, and the other ills listed in the plaintiff's complaint. Nonetheless, merely considering the right of a citizen of Alabama secured by any assault action against a defendant — the right not to have one's personal health endangered — the alleged injuries from smoking in terms of limitations of life expectancy, working incapacity and mere physical injury would raise the value of the rights protected by any successful *quo warranto* suit to over $75,000.00.

The motion to remand will be DENIED.

---

[8] If the court were analyzing whether the economic value to the plaintiff was greater than $75,000.00, the fact that the plaintiff would not be willing to accept any amount in lieu of an injunction might satisfy the amount in controversy requirement. On this argument, recalcitrant plaintiffs might find themselves easy targets for removal.

DONE and ORDERED this 23rd day of November, 1998.

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE